**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JIAN ZHANG,

Petitioner,

v. No. 2:26-cv-01578-KG-JHR

TODD BLANCHE, *Acting Attorney General of the United States, et al*.,

Respondents.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Petitioner Jian Zhang's Petition for a Writ of Habeas Corpus. [Doc. 1]. Chief District Judge Kenneth Gonzales referred the petition to me to submit proposed findings and a recommended disposition pursuant to 28 U.S.C. § 636. [Doc. 9]. Respondents[1] filed a response [Doc. 8] and Petitioner filed a reply [Doc. 10]. Having reviewed the briefing, case record, and applicable law, I recommend the Court GRANT Petitioner's habeas petition and ORDER Respondents to provide Petitioner with a bond hearing.

## I. PROCEDURAL BACKGROUND

Petitioner, a native and citizen of China, entered the United States without inspection on February 16, 2023. [Doc. 8, at 1]. Shortly after her entry, Border Patrol Agents apprehended Petitioner. *Id*. at 2. Petitioner passed a credible fear interview and was released on parole pending removal proceedings and consideration of her asylum application. *Id*. at 3–4. While awaiting her individual hearing, which was set for February 16, 2028, ICE arrested Petitioner on November 14,

[1] The "United States Respondents" include Respondents Todd Lyons in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Mary De Anda-Ybarra in her official capacity as Field Office Director for the El Paso Field Office for ICE, Markwayne Mullin in his official capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche in his official capacity as Acting Attorney General of the United States. [Doc. 1 at 4–5]. The United States Respondents filed the response to which Respondent Dora Castro, Warden of the Otero County Processing Center where Petitioner is detained, joined. [Doc. 7].

2025, when she reported to an immigration office in Chicago for a scheduled appointment. *Id*. at 4.

Petitioner's removal and asylum hearing was subsequently rescheduled to December 10, 2025. *Id*. At that hearing, the Immigration Judge found Petitioner removable under §§ 212(a)(7)(A)(i) and 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA). *Id*. at 5. The Immigration Judge denied Petitioner's application for asylum and ordered her removed to China. *Id*. Petitioner did not appeal the decision. [Doc. 1, at 8]. She is currently detained at the Otero County Processing Center awaiting removal. *Id*. at 6.

Petitioner advances three challenges to her continued detention: (1) because her removal is not reasonably foreseeable and there is no significant likelihood of removal in the reasonably foreseeable future, her indefinite detention violates the INA; (2) for the same reasons, her indefinite detention violates the Fifth Amendment's Due Process Clause; and (3) her warrantless arrest without cause violates the Fourth Amendment. [Doc. 1, at 13–18]. The government opposes the petition. [Doc. 8].

The parties dispute whether Petitioner should be considered arrested on November 14, 2025, pursuant to a lawful warrant, or on the date her removal order became final. [Docs. 1, at 8, 16; 8 at 4, 6]. As explained below, however, these disagreements do not affect my recommendations.

## II. Applicable Law

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Habeas corpus review is available under § 2241 if a noncitizen's detention "violat[es] the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

"[T]he Government ordinarily secures [a noncitizen]'s removal during" the 90 days after a removal order becomes administratively final. *Zadvydas*, 533 U.S. at 682; *see* 8 U.S.C. § 1231(a)(1). A removal order generally becomes administratively final upon the earlier of the noncitizen's waiver of appeal, expiration of the time to appeal if no appeal is filed, or dismissal of an appeal by the Board of Immigration Appeals. *See* 8 C.F.R. § 1241.1(a)–(c). During the 90-day "removal period," the noncitizen is typically detained. *Zadvydas*, 533 U.S. at 682. After the 90-day period, the Government may continue to detain the noncitizen for as long as is "reasonably necessary" to secure their removal. *Id*.; § 1231(a)(6).

Because indefinite detention of a noncitizen would raise Fifth Amendment due process concerns, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Zadvydas*, 533 U.S. at 690, 699. A six-month detention period is presumptively reasonable. *Id.* After that, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government "must...rebut that showing" or release the noncitizen. *Id*. at 701.

## III. ANALYSIS

### A. Petitioner has been continuously detained, after a final removal order, for at least six months.

As relevant here, the "removal period begins" when the removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B). The presumptively reasonable six-month period does not begin until the noncitizen is detained. *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 435 (S.D.N.Y. 2017) (stating that the presumptively reasonable period under *Zadvydas* "could not have begun until [the petitioner] was detained by ICE"); *see also Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011) ("*Zadvydas* time" cannot run "while a petitioner is not

in custody"). Because Petitioner was taken into custody and detained before a removal order, the six-month clock began when the removal order became administratively final.

As stated above, a removal order becomes administratively final upon the earlier of the dismissal or waiver of appeal, or expiration of the time to appeal if no appeal is filed. *See* 8 C.F.R. § 1241.1(a)–(c). Petitioner argues, because she did not appeal the removal order issued on December 10, 2025, the order became administratively final that same day. If so, Petitioner had passed the statutory 90-day "removal period" when she filed her petition and, as of this writing, has been detained for more than eight months since the order became final.

The phrase "waiver of appeal," however, is ambiguous and could refer either to a noncitizen's failure to file an appeal or to an affirmative waiver of the right to appeal.[2] The Government argues that "Petitioner reserved the right to appeal [the removal order] to the Board of Immigration Appeals, and she had until January 9, 2026, to submit her appeal." [Doc. 8, at 7]. Under the Government's interpretation, without an appeal, the removal order became administratively final on January 9, 2026, and Petitioner has been detained for more than seven months since the removal order became final.

Under either analysis, Petitioner has been detained beyond the six-month period deemed presumptively reasonable.

**B. Petitioner has met her burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.**

Petitioner argues that, since her removal order became final, ICE has been unable to remove her from the United States because China has refused to provide her with travel documents or otherwise accept her, and the Government has been unable to identify another country to which

[2] Since failure to file an appeal would eventually ripen into "expiration of the time allotted for an appeal," contemplated by 8 C.F.R. § 1241.1(c), it seems that "waiver of appeal" in § 1241.1(b) is distinguished by requiring an affirmative act. As will be explained, that issue is not determinative of the posture of this case.

she can be removed. [Doc. 1, at 11]. Petitioner therefore argues that there is no foreseeable removal in sight. *Id.*

The Government's brief states "immigration authorities requested acceptance of citizenship verification from the Republic of China on February 4, 2026, and are awaiting a response." [Doc. 8, at 6]. An attached Declaration of Deportation Officer Justin A. Johnson states the same and clarifies that "Petitioner is not yet scheduled for removal." [Doc. 8-1, at 1]. Thus, aside from the February 4, 2026, request to China, the Government identifies no further efforts to secure Petitioner's removal since the final removal order.

Rather than rebutting that there is no significant likelihood of removal in the reasonably foreseeable future, the Government's evidence appears to support it. *See Lush Ndou v. Noem*, 2026 WL 686564, at * 2 (D.N.M.) (concluding that "the completion of a pre-removal check" and assurance that arrangements are being made "do not amount to a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Good faith efforts are not enough."); *Ye v. Bondi*, 2025 WL 40334264, at * 5 (W.D. Okla.) (noting that "ICE's internal process lacks sufficient specificity with regard to Petitioner's likelihood of removal"); *Yan-Ling X. v. Lyons*, 2025 WL 3123793, at * 4 (E.D. Cal.) ("The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur.").

The Government's argument is that "[t]he presumptively reasonable six-month period allows immigration authorities until July 9, 2026, to effect Petitioner's removal."[3] [Doc. 8, at 9]. That date has now passed without demonstration that Petitioner will be removed in the reasonably foreseeable future.

---

[3] Petitioner has no criminal history and the Government does not argue that Petitioner falls within any class of noncitizens subject to additional detention by statute. *See* 8 U.S.C. § 1231(a)(6); [Doc. 1, at 7].

I recommend the Court find that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. The Government has not shown that China will provide proof of citizenship or otherwise authorize Petitioner's removal there, and no third-country option appears imminent. I therefore recommend the Court conclude that Petitioner is entitled to release from custody subject to reasonable conditions of supervision. *See Huang v. Castro*, No. 26-cv-01043, 2026 WL 1660465 (D.N.M. June 9, 2026). For that purpose, I also recommend the Court conclude that Petitioner is entitled to a bond hearing. *Compare Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) ("We hold that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).").

**C. Resolution of the right to a bond hearing supports deferring ruling on the constitutional issues pending the hearing result.**

Because I recommend the Court grant relief under the INA, the Court may decline to address Petitioner's remaining claims. However, Petitioner's argument that "[o]n information and belief, Petitioner was re-detained without a warrant and without cause" in violation of the Fourth Amendment is unsupported by the record. [Doc. 1, at 16].

In its response, the Government contends that "[d]ue to Petitioner's continuing failure to conduct scheduled biometric check-ins, Petitioner was deemed noncompliant [with her parole requirements] and an administrative warrant for her arrest was issued on November 14, 2025." [Doc. 8, at 4]. According to the Government, the warrant was executed the same day it was issued. *Id*. In her reply, Petitioner does not directly address the Government's contention that her arrest was made pursuant to a warrant. Instead, she simply reasserts that a warrantless arrest would violate the Fourth Amendment and the APA. [Doc. 10, at 8]. Because Petitioner has not provided

evidence to support her assertion that she was arrested without a warrant, her Fourth Amendment and APA claims fail on the present record.

Petitioner's Fifth Amendment due process claim presents similar concerns regarding the constitutionality of her continued detention that are addressed by her statutory claim under the INA. Because I recommend that the Court grant relief under the INA, I further recommend that the Court decline to reach the Fifth Amendment claim at this time.

## IV. CONCLUSION

For the reasons above, I recommend the Court GRANT the Petition for Writ of Habeas Corpus. [Doc. 1]. I further recommend the Court ORDER as follows:

1. Within 7 days of the Court's Order, the Government shall provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 C.F.R. § 236.1(c)(8).
2. At the individualized bond hearing, the Government shall establish by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.
3. The Government shall file a status report within 10 business days of the Court's Order certifying its compliance with the Court's Order.

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**